JS-6

**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   EDCV 14-01643-VAP (DTBx)                              Date:  December 9, 2014

Title:       NAZNEEN MOURI -v- BANK OF NEW YORK MELLON et al.
==================================================================
PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

| Marva Dillard | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS:   MINUTE ORDER (1) DENYING PLAINTIFF'S MOTION TO REMAND AND (2) GRANTING DEFENDANTS' MOTIONS TO DISMISS (IN CHAMBERS)

   Before the Court in this diversity-based wrongful foreclosure action are Plaintiff Nazneen Mouri's motion to remand the case to state court (Doc. No. 10) and two separate motions to dismiss, one filed by Defendants Bank of New York Mellon ("BNY"); Mortgage Electronic Registration Systems, Inc. ("MERS"); MERSCORP Holdings, Inc.; and Select Portfolios Servicing, Inc. (collectively "BNY Defendants") (Doc. No. 9.), and one filed by Defendant Bank of America, N.A. ("Bank of America").  (Doc. No. 14.)[1]  The motions are appropriate for resolution without a

---

[1] Bank of America's motion only deals with Claims 2, 4, and 5 of Plaintiff's Complaint (claims for fraud, slander of title, and UCL).  To the extent Bank of
(continued...)

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

hearing.  See Fed. R. Civ. P. 78; Local R. 7–15.  After considering the papers timely filed in support of and opposition to the motions, and the exhibits attached to them, the Court DENIES Plaintiff's motion to remand; GRANTS Defendants' motions to dismiss; and VACATES the hearing scheduled for December 8, 2014.

## I.  BACKGROUND

### A. Facts

Nazneen Mouri ("Plaintiff") purchased the residential property located at 7460 Lawrence Place, Fontana, California ("Residence") on August 19, 2005.  (Not. of Removal Ex. A ("Compl.") ¶¶ 5,10, Doc. No. 1.)  To buy the Residence, Plaintiff took out a mortgage from Lendingtree Loans ("Lendingtree"), which was secured by a lien on the Residence.  (Id. ¶ 10.)  Among the loan documents then executed were a promissory note and a deed of trust ("DOT").  (Id.)

Plaintiff asserts MERS[2] assigned the DOT to BNY on June 7, 2011, and an entity called Recontrust,[3] "on behalf of" BNY, "recorded a Substitution of Trustee naming Recontrust as the trustee" of the DOT on September 12, 2011.  (Compl. ¶¶ 11, 12.)  Recontrust allegedly recorded a Notice of Default ("NOD") on September 12, 2011 and a Notice of Trustee's Sale ("NOTS") on December 19, 2011 against the Residence, and recorded a second NOTS against the Residence on April 8, 2013.  (Id. ¶¶ 13–15.)  Plaintiff alleges the June 7, 2011 transfer of the

---

[1](...continued)
America's motion or arguments differ from BNY's the Court will note any divergence.

[2] The Complaint states: "MERS is a process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked.  MERS eliminates the need to prepare and record assignments when trading MERS mortgage loans.  MERS is the alleged nominee for the lender beneficiary of the Deed of Trust."  (Compl. ¶ 4.)

[3] Recontrust, Inc. is not a party to this litigation.

MINUTES FORM 11                                             Initials of Deputy Clerk md/wr
CIVIL -- GEN                           Page 2

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

DOT[4] to the BNY-administered trust (for the purpose of securitization) was unlawful, so the DOT was rendered "null and void." (See Compl. ¶¶ 43–44, 48.) All her claims derive from that allegedly improper assignment. (See id. ¶¶ 46–48.)

The Complaint sets forth background allegations regarding mortgage-backed securities, explaining securitization is the process by which mortgage loans are bundled together and offered for sale to investors, often in the form of a bond. (Compl. ¶ 17.) Each bundle starts as a trust, but the mortgages first must pass through a real estate mortgage investment conduit ("REMIC") to reach the trust. (Id. ¶ 18–21.) A pooling and servicing agreement ("PSA") creates the trust, and the PSA's terms govern the trust's operation. (Id. ¶¶ 22–24.) The provision of the PSA most relevant to this matter is the date on which the trust closes, that is, the date by which all mortgages must be deposited into the trust ("Closing Date"). (Id. ¶ 38.) Plaintiff finally explains: "[i]f a mortgage assignment is dated . . . in a year after the year set forth in the name of the grantee trust on the assignment, it is actually an assignment that was 'specially' and fraudulently made to facilitate initiating foreclosure proceedings." (Id. ¶ 42.)

Plaintiff contends that on June 7, 2011 "Bank of America and/or MERS attempted to transfer and assign Plaintiff's loan to the CWALT, Inc. Alternative Loan[5] securitized trust" for which BNY was trustee. (Compl. ¶ 43.) The Closing Date for the CWALT was September 29, 2005. (Compl. ¶ 45.) Therefore the DOT was improperly transferred to the CWALT, under the terms of the CWALT's PSA. (Compl. ¶ 46.) According to Plaintiff, this defective transfer "results in the Deed of Trust being null and void," and so the NOD and NOTSs are similarly void as BNY

---

[4] The Complaint first states that MERS transferred the DOT on June 7, 2011, but later asserts it was "Bank of America and/or MERS" who attempted the transfer on that date. (See Compl. ¶¶ 11, 43.)

[5] The CWALT, Inc. Alternative Loan securitized trust ("CWALT") "issued investment bonds in the mortgage-backed trust." (Compl. ¶ 44.) The CWALT is a trust that turned into a bond through the alchemy of securitization, and was the final destination for Plaintiff's loan.

"lacks authority to exercise the power of sale contained in the Deed of Trust." (Compl. ¶¶ 48, 49); Cf. Glaski v. Bank of America, N.A. 218 Cal. App. 4th 1079, 1082 (2013) ("[T]he specific defect alleged is that the attempted transfers were made after the closing date of the securitized trust holding the pooled mortgages and therefore the transfers were ineffective.") (emphasis in original); Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 505 (2013) ("The crux of Jenkins's lawsuit is based on her theory her loan was pooled with other home loans in a securitized investment trust . . . without proper compliance with the investment trust's pooling and servicing agreement.").

### B.    Procedural History

Plaintiff sued Bank of America and BNY Defendants in California Superior Court on June 25, 2014, and BNY Defendants removed the case on August 8, 2014. (Not. of Removal.)  Plaintiff asserts five claims: (1) declaratory relief; (2) lack of standing to foreclose due to violation of California Civil Code § 2924(a)(6); (3) fraud; (4) slander of title; and (5) violation of California Business and Professions Code § 17200.  (Compl.)  The Complaint seeks relief in the form of: compensatory damages; special damages; general damages; punitive damages; restitution; attorney's fees and costs; declaratory relief to the effect that the NOD and NOTS are void; and equitable relief in the form of an injunction to prevent a trustee's sale of the Residence.

BNY Defendants filed a motion to dismiss on August 15, 2014; Plaintiff filed a motion to remand the case on August 18, 2014; and Bank of America filed a motion to dismiss on September 2, 2014.

## II.  LEGAL STANDARD

### A.    Motion to Remand

Removal jurisdiction is governed by statute. See 28 U.S.C. §§ 1441 et seq. The Ninth Circuit has held unequivocally that the removal statute is construed strictly against removal. Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988).  The strong presumption against removal jurisdiction means that "the defendant always has the burden of establishing that removal is proper." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990)); see also In re Ford

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 957 (9th Cir. 2001) ("The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court.").

## B. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556). Recently, the Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing the party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III. DISCUSSION

## A. Motion to Remand

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

  A defendant may remove a case filed in state court to federal court if the federal court would have subject matter jurisdiction over the case in the first instance.  See 28 U.S.C. § 1441(a).  Section 1332, one source of original jurisdiction, requires in relevant part: (1) complete diversity of the parties' citizenship, and (2) at least $75,000 in controversy in the litigation.  See 28 U.S.C. § 1332(a).  The removing defendant must show both of § 1332's jurisdictional elements are, more likely than not, met.  See, e.g., Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (explaining that the removing defendant "should have proven, by a preponderance of the evidence, that the amount in controversy met the jurisdictional threshold") (internal quotations and alterations omitted).  If either of those two jurisdictional requirements are lacking, the federal court must remand the case to its state counterpart.

  Complete diversity of citizenship exists when the citizenship of "each plaintiff is different from that of each defendant."  Hunter v. Phillip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009).  A corporation is a citizen of the state of its incorporation and the state where its principal place of business is located.  Harris v. Rand, 682 F.3d 846, 850–51 (9th Cir. 2012) (quoting Hertz Corp. v. Friend, 559 U.S. 77 (2010)).  A national banking association "is a citizen of the State in which its main office, as set forth in its articles of association, is located."  Wachovia Bank v. Schmidt, 546 U.S. 303, 307 (2006) (interpreting 28 U.S.C. § 1348).  An individual's domicile determines her citizenship.  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  Id.

  The diversity statute also requires the amount in controversy exceed $75,000.  28 U.S.C. § 1332(a).  In cases that seek declaratory relief, the amount in controversy takes into account the "object of the litigation."  Zepeda v. U.S. Bank, N.A., No. SA CV 11–0909 DOC (RNBx), 2011 WL 4351801, at *3–4 (C.D. Cal. Sept. 16, 2011) (quoting Hunt v. Wash. State Adver. Comm., 432 U.S. 333, 347 (1977)).  More specifically, in actions seeking to enjoin residential foreclosures the amount in controversy may be based on the outstanding amount of the loan or the value of the property.  See Harvey v. Bank of Am., N.A., 906 F. Supp. 2d 982, 988 n.2 (C.D. Cal. 2012) ("The object of this litigation is either Plaintiff's . . . residence, which is likely worth more than the jurisdictional amount of $75,000, or the amount owing under the

notice of default.") (emphasis added).[6]  Where original loan amounts greatly exceed $75,000, courts routinely find the amount in controversy requirement met without specific reference in the complaint or notice of removal to the market value of the real property that secures the mortgage.  See Rose v. J.P. Morgan Chase, N.A., No. Civ. 2:12–225 WBS (CMKx), 2012 WL 892282, at *2 (E.D. Cal. 2012) (current property value "likely" exceeded $75,000 because the "property was used to secure a loan of $349,000"); see also Cabriales v. Aurora Loan Servs., No. C 10–161, 2010 WL 761081, at *3 (N.D. Cal. Mar. 2, 2010).

In this case, Plaintiff is a citizen of a different state than any Defendant.  She has lived at the property underlying this litigation since 2005, and her action to enjoin the foreclosure sale shows her likely intent to remain there, making her a citizen of California.  No Defendant is a citizen of California, according to the notice of removal.[7]  Accordingly, the parties are completely diverse.

The amount in controversy in this case likely exceeds $75,000.  The original principal amount of Plaintiff's loan was $379,500, which was secured by the Residence.  (Not. of Removal ¶ 14.)  Even if the value of the Residence decreased by 50 percent since 2005, its current value would still be more than double the amount required by § 1332(a).  Like Rose, the Court finds the value of the Residence is more likely than not greater than $75,000.  Additionally, the outstanding balance of the loan is at least $460,000.  (Id.)  Under either method for

---

[6] The two different (but rarely divergent) approaches stem from ambiguous language in Garfinkle v. Wells Fargo Bank, 483 F.2d 1074 (9th Cir. 1973), where the court calculated the amount in controversy in a foreclosure case under both standards but did not explain which it relied on.  See also Reyes v. Wells Fargo Bank, N.A., No. C–10–01667 JCS, 2010 WL 2629785, at *5–6 (N.D. Cal. June 29, 2010) (referring to the property's market value or the unpaid loan amount: "[h]ere, as in Garfinkle, the Court need not decide which method of determining the value of the injunctive relief should be used").

[7] The Court takes the notice of removal at face value, and it states the defendants are citizens of Delaware, Virginia, New York, North Carolina, and Utah.

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

calculating the amount in controversy where residential property is the object of the litigation, the amount in controversy exceeds $75,000.

The Court finds that both jurisdictional elements of § 1332(a) are met by a preponderance of the evidence, so removal was proper.

Plaintiff's second argument in favor of remand is similarly unavailing. She contends that because her suit seeks declaratory relief this Court's jurisdiction is discretionary, and the case should be remanded because it is predicated entirely on state law.  See Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 802 (9th Cir. 2002) ("The exercise of jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), is committed to the sound discretion of the federal district courts.")

But this case was not brought under § 2201, rather, it asserts California claims and is only in federal court because Defendants removed it from the California Superior Court.  See §§ 1332(a), 1441(a).  As such, the Court's jurisdiction is not discretionary because the statutory criteria for removal of a state court action have been met.

The motion to remand is DENIED.

**B.    Motion to Dismiss**
   **1.    Plaintiff's Claim for Declaratory Relief**
Plaintiff's first claim, brought under California Code of Civil Procedure § 1060, asks for a declaration that BNY Defendants are "without any right to proceed with a foreclosure sale of the subject property," and as to whether BNY's "alleged interest in Plaintiff's home is secured or unsecured."  (Compl. ¶¶ 51, 52.)

Plaintiff lacks standing to seek such declarations, because there is no live dispute between she and the holder (valid or otherwise) of the DOT to the Residence.  Under California law, a homeowner may not challenge the validity of the securitization of her residential loan, or the status of the loan holder's security interest.  Jenkins, 216 Cal. App. 4th at 513–15.  This is so because "even if the asserted improper securitization (or any other invalid assignments or transfers of the promissory note subsequent to [the note's execution]) occurred, the relevant parties

**EDCV 14-01643-VAP (DTBx)**
**NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.**
**MINUTE ORDER of December 9, 2014**

to such a transaction were the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note." Id. at 514–15. The "true victim" of such an invalid transfer would be the subsequent acquirer of the instrument, and, accordingly, that is the party able to show a "controversy of concrete actuality." Id. at 515.

Plaintiff points to Glaski, 218 Cal. App. 4th 1079, to support her claim for declaratory relief. (Opp'n at 3, Doc. No. 17.) In Glaski, the court found standing to pursue a wrongful foreclosure cause of action based on the theory that an invalid securitization (namely that the deed's transfer occurred after the PSA's closing date) voids the assignment of the deed of trust. Id. at 1094–95. To the extent Glaski resembles this case, it is at odds with the weight of both state and federal authority on the issue of standing in foreclosure cases. See Mendoza v. JPMorgan Chase Bank, N.A., 228 Cal. App. 4th 1020, 1033–34 (2014) (collecting cases and explaining: "[w]e can find no state or federal cases to support the Glaski analysis and will follow the federal lead in rejecting this minority holding").[8] The Court too rejects the legal theory and holding of Glaski, because it "allow[s] a debtor in a commercial transaction to invoke the provisions of a trust to which it is a stranger in order to frustrate the collection of the debt." Mendoza, 228 Cal. App. 4th at 1031 (quoting Bank of Am., N.A. v. Bassman FBT, LLC, 981 N.E.2d 1, 13 (Ill. App. Ct. 2012)).

Plaintiff cannot show she is a party to an actual controversy arising out of the allegedly improper transfer. Accordingly, her claim for declaratory relief is DISMISSED WITHOUT LEAVE TO AMEND.

### 2. Lack of Standing to Foreclose Due to Violation of California Civil Code § 2924(a)(6)

California Civil Code § 2924(a)(6) permits only a holder of a beneficial interest under a deed of trust to record a notice of default or initiate a nonjudicial foreclosure

---

[8] The California Supreme Court has granted a petition for review in the Mendoza case, see 2014 WL 6463082; however, the Court cites that case not for legal support but for its thorough review of relevant precedent.

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

proceeding. Plaintiff claims "Defendant does not have any beneficial interest in their [sic] Note or Deed of Trust," because the assignment of the DOT into the trust violated the terms of the PSA. (Compl. ¶¶ 78–80.)

Section 2924 delineates California's nonjudicial foreclosure scheme. See Cal. Civ. Code § 2924 et seq. Its comprehensive statutory framework "cover[s] every aspect of exercise of the power of sale contained in a deed of trust." Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1154 (2011). "However, nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized." Id. at 1155; accord Jenkins, 216 Cal. App. 4th at 513 ("[Jenkins] fails to identify legal authority for such a preemptive action in the statutory provisions setting forth the nonjudicial foreclosure scheme."). In other words, because § 2924 provides an "exhaustive" scheme for nonjudicial foreclosure procedures, California courts do not read the statute as providing a private right of action to challenge a nonjudicial foreclosure where the law's text does not so provide.

Accordingly, Plaintiff's assertion that BNY lacks standing to proceed with the nonjudicial foreclosure because BNY does not meet § 2924's criteria fails at the outset.[9] Plaintiff's claim that BNY has no standing to foreclose under § 2924(a)(g) is DISMISSED WITHOUT LEAVE TO AMEND.

### 3. Fraud

In California, fraud consists of "(1) [a] misrepresentation; (2) knowledge of the falsity or scienter; (3) intent to defraud –- that is, induce reliance; (4) justifiable reliance; and (5) resulting damages." Glaski, 218 Cal. App. 4th at 1090. Under

---

[9] Even if the Court reads § 2924 as possibly providing an implied right of action, see Siliga v. Mortgage Electronic Registration Systems, Inc., 219 Cal. App. 4th 75, 82 (2013), Plaintiff's allegations do not show she has been prejudiced by the allegedly improper transfer of the DOT. Cf. Siliga, 219 Cal. App. 4th at 85 ("The assignment of the deed of trust and the note did not change the [borrower]'s obligations under the note, and there is no reason to believe . . . the original lender would have refrained from foreclosure.").

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

Federal Rule of Civil Procedure 9(b) (which controls the conduct of litigation in federal court without consideration of the source of subject matter jurisdiction, see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2014)), "a party must state with particularity the circumstances constituting fraud."  Particularity, in the Rule 9(b) sense, means the complaint must "specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993).

     Plaintiff's fraud claim relies on at least three separate contentions, including (1) the MERS corporate officer who executed the DOT's transfer lacked personal knowledge of the assignment "for which she attested," (2) the transfer of the DOT into the CWALT occurred after the Closing Date of the CWALT's PSA, and (3) Bank of America fraudulently executed the assignment through the use of a "robo-signer." (Compl. ¶¶ 66, 68, 70.)  Plaintiff maintains she has been damaged because she "has been precluded from negotiating a modification directly with the real party in interest to her loan, including other foreclosure prevention alternatives."  (Id. ¶ 75.)

     Plaintiff's fraud claim fails to allege facts with the level of detail required by Rule 9(b) that plausibly show intent to defraud, justifiable reliance, or resulting damages.  Rather, the Complaint baldly asserts Defendants "attempt[ed] to defraud and induce Plaintiff to rely on their representations," which only asserts the element of the tort.  Next, Plaintiff alleges she justifiably relied on Defendants' representations "by attempting to negotiate foreclosure prevention alternatives with Defendants," but fails to state when, where, or how she tried to pursue modification. Finally, Plaintiff asserts she "incurred damages" because she has to "defend against Defendants fraudulent conduct and slander against her property," but that is not a loss that flows proximately from any alleged misrepresentation; instead it is the result of Plaintiff's affirmative conduct in filing this lawsuit.

     Plaintiff has not alleged the elements of fraud with adequate specificity, so the motion to dismiss the fraud claim is GRANTED as to all Defendants.

    **4.**    **Slander of Title**
Under California law, the slander of title tort requires "(1) a publication; (2)

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

which is without privilege or justification; (3) which is false; and (4) which causes direct or immediate pecuniary loss." Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1051 (2009). Plaintiff contends "Defendants . . . disparaged Plaintiff's exclusive valid title by . . . publishing, and recording numerous documents," including the NOD and NOTSs. (Compl. ¶ 84.)

Putting aside any claims that the NOD is privileged, BNY Defendants did not publish the NOD or NOTSs, and neither did Bank of America or any of its agents. Recontrust did. (See Compl. ¶¶ 13, 14, 15.) Recontrust is not a defendant in this matter, and Plaintiff has not alleged it is an agent of any named Defendant.[10] Accordingly, the motions to dismiss the slander of title claim against BNY Defendants and Bank of America are GRANTED.

### 5. California Unfair Competition Law

The California Business and Professions Code prohibits, in relevant part, any "unlawful, unfair or fraudulent business act or practice." See Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). The sufficiency of a UCL claim is evaluated under Federal Rule of Civil Procedure 9(b). Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("We have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL."). Plaintiff's UCL claim puts forth a expansive list of allegedly unlawful or unfair actions taken by Defendants (Compl. ¶¶ 96–101), and states that those actions "direct[ly] and proximate[ly]" caused Plaintiff to suffer both damages and consequential damages. (Compl. ¶ 103.)

A private person may assert a UCL claim only if she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. This standing requirement manifests as a two-part test: the party asserting a UCL claim must show (1) economic injury that was (2) caused by the unfair business practice complained of. Kwikset Corp. v. Superior Court, 51 Cal.

---

[10] Plaintiff has alleged Recontrust recorded a substitution of trustee naming Recontrust as CWALT's trustee, and that Recontrust did this "on behalf of" BNY. (Compl. ¶ 12.) But the Complaint unambiguously states "Recontrust recorded a Notice of Default," and "Recontrust recorded a Notice of Trustee's Sale," without any further connection between Recontrust and BNY. (Compl. ¶¶ 13, 14.)

EDCV 14-01643-VAP (DTBx)
NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.
MINUTE ORDER of December 9, 2014

4th 310, 322 (2011). Lost money or property is a "classic form of injury in fact." Id. at 323. A diminution of a "future property interest" is a sufficient economic injury to support UCL standing. Jenkins, 216 Cal. App. 4th at 522. Courts apply a "commonsense" reading to the causation element; it "requires a showing of a causal connection or reliance on the alleged misrepresentation." Kwikset, 51 Cal. 4th at 326. "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered the same harm whether or not a defendant complied with the law." Jenkins, 216 Cal. App. 4th at 522 (internal quotation marks omitted).

Here, Plaintiff has alleged economic injury within the meaning of the UCL because she is facing foreclosure on her property. Cf. Jenkins, 216 Cal. App. 4th at 522 (finding economic injury where homeowner sought to challenge nonjudicial foreclosure because, if completed, the foreclosure would "extinguish" plaintiff's interest in her property). But Plaintiff has not adequately alleged causation –- her theory is the transfer deprived her of the chance to negotiate a modification with the "real party in interest to her loan."[11] (Compl. ¶ 75.) Plaintiff attaches various documents to the Complaint, including the NOD and the NOTS. (See Compl. Exs. C, D, E.)[12] The NOD (Compl. Ex. C), dated September 12, 2011, indicates Plaintiff was $21,014 behind in payments on the loan when Recontrust filed the NOD (and Plaintiff does not allege otherwise). The NOD was filed about three months after the allegedly improper transfer of the DOT into the CWALT, and it explains in bold, large-type font whom Plaintiff could contact to "arrange for payment to stop the foreclosure." (Id.) Despite Plaintiff's allegations, it is implausible that the transfer of

---

[11] To the extent Plaintiff alleges damages, she has failed to allege them with adequate specificity. She has not explained what the damages were or when they arose.

[12] The Court may consider these exhibits, although they are outside the Complaint, because "[i]f a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint." Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987); accord Chan Tang v. Bank of Am., N.A., No. SACV 11–2048 DOC (DTBx), 2012 WL 960373, at *1 n.1 (C.D. Cal. Mar. 19, 2012).

**EDCV 14-01643-VAP (DTBx)**
**NAZNEEN MOURI v. BANK OF NEW YORK MELLON et al.**
**MINUTE ORDER of December 9, 2014**

the DOT precipitated the foreclosure, even if the transfer did violate the letter of the PSA.  What is more, nothing Defendants did prevented Plaintiff from pursuing a loan modification before the June 7, 2011 transfer, or after it, or after the NOD when she learned the entity she could contact for that very purpose.  The alleged untimely transfer of the DOT into the CWALT did not cause the foreclosure, so Plaintiff lacks standing under the UCL.

Accordingly, the motion to dismiss Plaintiff's UCL claim is GRANTED as to all Defendants.

### IV.  CONCLUSION

For the reasons stated above, Plaintiff's motion to remand is DENIED; Plaintiff's claims against BNY Defendants for declaratory relief and that Defendants do not have standing to foreclose upon her property are DISMISSED WITHOUT LEAVE TO AMEND; and Plaintiff's claims against all Defendants for fraud, slander of title, and UCL violations are DISMISSED.

**IT IS SO ORDERED.**